UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUANG XUAN LIU, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WIN WOO TRADING, LLC, et al., <br><br> Defendants. | Case No. 14-cv-02639-KAW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART WIN WOO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PEI XIONG LIN** <br><br> Re: Dkt. Nos. 115, 116 |

On June 9, 2014, Plaintiffs Kuang Xuan Liu and Pei Xiong Lin filed this action against Defendants Win Woo Trading, LLC, Safety Trucking, LLC, and individuals Jia Jing Zheng, Jia Tun Zheng, and Mindy Fang alleging claims including violations of the Fair Labor Standards Act and the California Labor Code.

Before the Court is Defendants Win Woo Trading, Jia Jing Zheng, and Mindy Fang's (collectively "Win Woo Defendants") motion for summary judgment against Pei Xiong Lin. (Defs.' Mot., Dkt. No. 115 & 116.)

On May 5, 2016, the Court held a hearing, and, after careful consideration of the parties' arguments and moving papers, and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Defendant Win Woo Trading, LLC is a grocery wholesaler and distributor that sells to Chinese restaurants. (Decl. of Jia Jing Zheng, "J. Zheng Decl.," Dkt. No. 119 ¶ 3). Defendant Jia Jing Zheng (or "Jason")[1] is the managing member of Win Woo. *Id.* at ¶ 1. Jia Jing Zheng owns a

---

[1] Jia Jing Zheng uses the English name of "Jason." (Defs.' Mot. at 1 n. 1.) In Lin's deposition transcript, Lin used "Jason" to refer to Jia Jing Zheng. *Id.*

1   minority interest in the company. *Id.* at ¶ 4.

2   Win Woo Trading, LLC uses Safety Trucking, LLC to transport products to its customers.
3   *Id.* at ¶ 11. Safety Trucking is a licensed trucking company that primarily provides services to
4   Win Woo Trading, LLC. (Decl. of Jia Tun Zheng, "T. Zheng Decl.," Dkt. No. 118 ¶¶ 2, 8, 10).
5   The trucks used by Safety Trucking are owned by the company, registered in the name of Safety
6   Trucking, and operated under Safety Trucking's United States Department of Transportation
7   Number. *Id.* at ¶ 9, Ex. A. Safety Trucking invoiced Win Woo Trading, LLC for the trucking
8   services and Win Woo paid Safety Trucking for those services. *Id.* at ¶ 11. Jason claims to not
9   have any role in the management or decision making at Safety Trucking. *Id.* at ¶ 5.

10  Jia Tun Zheng (or "Tun")[2] is the managing partner and majority owner of Safety Trucking.
11  *Id.* at ¶¶ 1, 3. Jia Tun Zheng does not have an ownership interest in Win Woo Trading, LLC and
12  claims to not have any role in the management or decision making for Win Woo. *Id.* at ¶ 4.

13  Mindy Fang owns a minority interest in both Win Woo and Safety Trucking. (J. Zheng
14  Decl. ¶ 4; T. Zheng Decl. ¶ 3.)

15  Plaintiff Pei Xiong Lin began working as a truck driver for Safety Trucking in
16  approximately June 2008. (Defs.' Dep. of Pei Xiong Lin, "Defs.' Lin Dep.," Decl. of Margaret J.
17  Grover, Dkt. No. 117, Ex. E at 16:12-14; T. Zheng Decl. ¶ 14.) He was interviewed and hired by
18  Jason. (Pls.' Dep. of Pei Xiong Lin, "Pls.' Lin Dep.," Decl. of X. Young Lai, "Lai Decl.," Dkt.
19  No. 147-1, Ex. C at 15:22-23, 32:13-25.) His duties were limited to driving trucks to restaurants
20  and taking the goods from the truck into the restaurant. (Defs.' Lin Dep. at 22:25-23:5). Plaintiff
21  met Tun after he started working at the company. (Defs.' Lin Dep. at 20:18-25). Plaintiff took
22  direction from both Jason and Tun. (Defs.' Lin Dep. at 21:7-9; Pls.' Lin Dep. at 29:23-25; T.
23  Zheng Decl. ¶¶ 28-30.)

24  Plaintiff was unable to recall filling out any time records when he was first employed as a
25  driver. (Defs.' Lin Dep. at 41:25-42:2). He recalled completing handwritten timecards, which he
26  believed began in 2012 or 2013. (Defs.' Lin Dep. at 43:23-44:8). When Plaintiff filled out a

---

[2] Jia Tun Zheng is sometimes referred to in Mr. Lin's deposition transcript as "Brother Tun." (Defs.' Mot. at 2 n. 2.)

1  handwritten timecard, he did so accurately, but if an error was made, he would report it. (Defs.'
2  Lin Dep. at 57:18-21, 58:5-12). He recalled that he began to use a time clock to record his work
3  hours, but was not sure when the time clock was instituted. (Defs.' Lin Dep. at 42:4-43:2). He has
4  no reason to dispute the accuracy of any of the time records reflecting his work as a driver. (Defs.'
5  Lin Dep. at 45:10-22; 58:13-16; 178:15-24).

6  At the time of hiring, Plaintiff received a salary of $2,600 per month, as well as on-site
7  housing. (Pls.' Lin Dep. at 33:18-34:9, 34: 25-36:18.) Although he was supposed to be paid a
8  salary, Plaintiff's checks always showed hours and an hourly rate of pay. (T. Zheng Decl. ¶ 27,
9  Ex. D.) He has no records that would show cash paid to him, but believes that he was paid in cash
10 only for the first year that he worked. (Defs.' Lin Dep. at 50:21-51:22). Plaintiff could not recall
11 when his pay switched to an hourly rate, but was informed that the change would result in him
12 being paid about the same amount, but his pay was not set. (Defs.' Lin Dep. at 78:11-14; Pls.' Lin
13 Dep. at 95:6-96:23, 101:14-102:4.) By 2013, Plaintiff's compensation was based upon hours.
14 (Defs.' Lin Dep. at 75:21-24). Plaintiff took lunch breaks of an indeterminate amount of time
15 when hungry, but claims that he did not take rest breaks. (Pls.' Lin Dep. at 39:17-24.)

16 Plaintiff last worked as a truck driver on February 18 or 19, 2013. (Defs.' Lin Dep. at
17 26:15-20).

18 On April 16, 2014, Plaintiffs' counsel sent a written request to Win Woo and Safety
19 Trucking to obtain Plaintiff's personnel records. (First Am. Compl., "FAC," Dkt. No. 7, ¶ 57, Ex.
20 A.) Win Woo's counsel requested that Plaintiffs' counsel provide a written authorization to
21 release the personnel files. (Grover Decl. ¶ 3.) Plaintiffs' counsel asserted that his letter was
22 sufficient verification. *Id.* On June 9, 2014, Plaintiffs Kuang Xuan Liu and Pei Xiong Lin filed
23 this wage and hour action in federal court.

24 On February 11, 2016, Defendants filed a motion for summary judgment. (Defs.' Mot.,
25 Dkt. No. 116.) Plaintiffs filed a joint opposition on March 4, 2016. (Pls.' Opp'n, Dkt. No. 147.)
26 Defendants filed a reply on March 10, 2016. (Dkt. No. 151.) On March 11, 2016, which was the
27 last day to file a reply brief, Defendants filed an amended reply, in which they withdrew the
28 portions of their motion for summary judgment. (Defs.' Am. Reply, Dkt. No. 153 at 2.)

3

1    On May 4, 2016, Plaintiffs filed a declaration of counsel concerning newly discovered evidence. (Dkt. No. 175.) Plaintiffs did not have leave to file this document, so it is stricken.

## II. LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*,

4

247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III.   DISCUSSION

**A.   Motion for Summary Judgment**

As an initial matter, the Win Woo Defendants withdrew the portions of their motion for summary judgment which asserted that Win Woo Trading, LLC and Jai Jing (Jason) Zheng were not joint employers with Safety Trucking, LLC. (Defs.' Am. Reply at 2.)

**i.   Mindy Fang may have been a joint employer.**

Defendants contend that Mindy Fang was not an employer, and seek summary judgment as to all claims against her, on the grounds that she never controlled any aspect of Plaintiff's employment. (Defs.' Mot. at 13; Defs.' Am. Reply at 4.) Defendants cite to Plaintiff's deposition testimony, which suggested that he did not have personal knowledge of Fang's role in Safety Trucking. (Defs.' Mot. at 13.) Indeed, it is undisputed that during Plaintiff's employment, he did not know which roles Fang played in the Safety Trucking organization. He knew that she worked in the office, and recalled asking her to issue his entire paycheck in check form. (Defs.' Lin Dep. at 86:15-18.)

In opposition, Plaintiff contends that, despite Tun's testimony that Fang had not been involved in the company since 2008, she was signing checks on behalf of Safety Trucking in 2013. (Pls.' Opp'n at 23.) Indeed, Fang signed check number 4808 drawn on Safety Trucking's checking account at East West/United Commercial Bank, a copy of which was subpoenaed by Plaintiffs. (*See* Lai Decl. ¶ 6, Ex. E at 24.) Defendants' assertion that the signature is not

5

authenticated is incorrect, because cancelled checks and the bank signatory cards are self-authenticating pursuant to Federal Rule of Evidence 902(9). *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004)(cancelled checks are commercial paper).  Thus, Mindy Fang's status as a signatory on Safety Trucking's bank accounts, coupled with the fact that she signed a check during the statutory period, creates a factual dispute as to whether she is a joint employer.

Moreover, Plaintiff's lack of personal knowledge does not mean that Fang was not one of his employers.  It is undisputed that she has a minority ownership interest in both Safety Trucking and Win Woo. (J. Zheng Decl. ¶ 4; T. Zheng Decl. ¶3.)

For the reasons set forth above, the motion for summary judgment as to Mindy Fang is denied.

### ii. Alter Ego Theory

Defendants seek summary judgment on claims against the Win Woo Defendants on the grounds that they cannot be held liable as Plaintiff's employer under an alter ego theory. (Defs.' Mot. at 9-10; Defs.' Am. Reply at 4-5.)

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (internal citation omitted).  Under the doctrine, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the acts of the corporation." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000). "There is a strong presumption against disregarding corporate identities and finding a person to be the alter ego of a corporation." *Tarel Seven Design, Inc. v. Magni Grp., Inc.*, 1990 WL 118290, at *4 (C.D. Cal. May 30, 1990) (citing *In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 338 (9th Cir.1978)). To overcome this presumption and pierce the corporate veil, a plaintiff must state sufficient facts to find "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler,* 39 Cal. 3d at 300.

6

The operative complaint alleges that the respective individual defendant shareholders are the alter egos of Win Woo and Safety Trucking, and contains sufficient facts that, if true, overcome the presumption against alter ego. (*See* FAC ¶ 8.)  In their motion, Defendants contend that the alter ego doctrine does not apply on the grounds that the owners of Win Woo and Safety Trucking have very little overlap, the Limited Liability Companies have different managing partners, and the businesses maintain separate books and records. (Defs.' Mot. at 10.) Additionally, Defendants argue that Safety Trucking is not undercapitalized, because Safety Trucking owns the trucks used in its business and has been paying wages to its drivers since it was formed. *Id.*

Notwithstanding, Defendants have not addressed the allegations in the complaint, as they have failed to articulate how the individual defendants are not alter egos of Safety Trucking or Win Woo. (*See* Defs.' Mot. at 9.)  Instead, Defendants appear to argue that Win Woo is not a corporate alter ego of Safety Trucking. *See id.*  The First Amended Complaint, however, does not allege that Win Woo and Safety Trucking are corporate alter egos.  Indeed, the applicable allegation is that the respective defendant shareholders of Safety Trucking (Tun and Mindy Fang) and Win Woo (Jason and Mindy Fang) are alter egos. (FAC ¶¶ 8-9.)  Defendants do not address this in their motion for summary judgment, and, therefore, have not satisfied their initial burden as the moving parties. *Celotex,* 477 U.S. at 323.  Thus, Plaintiff is not required to set forth specific facts to show that there is a genuine issue for trial.

Accordingly, Defendants' failure to properly discharge its initial burden precludes summary judgment on the alter ego theory of liability.

### iii. Equitable Estoppel

The twelfth cause of action seeks to prevent Defendants from asserting that some of Plaintiff's claims are time-barred.

Defendants contend that the facts alleged do not establish equitable estoppel, because the entry of a confidential settlement does not give rise to estoppel. (Defs.' Mot. at 4.)  Under California law, equitable estoppel generally arises from misleading statements about the need for or advisability of bringing suit, but estoppel can also arise from the defendant's threats or

intimidation that prevent the timely filing of a suit. *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 445 (1989).

Here, Plaintiff argues that Plaintiff Liu did not know about his potential wage claims because the truck drivers involved in the earlier civil action were not permitted to discuss the matter due to a confidentiality clause in the settlement agreement. (Pls.' Opp'n at 3.) Plaintiff Lin does not cite any evidence that he was similarly unable to contact the truck drivers to find out how the case was resolved. Regardless, the failure to provide information about a confidential settlement is not misleading.

In addition, Plaintiff claims that he was dissuaded from filing the lawsuit by promises that the working conditions would improve. To the contrary, Lin testified only that Jason offered to generally resolve any issues he had if he would not participate in the one-day strike and, instead, make his deliveries. (Pls.' Lin Dep. at 119:5-25.) Indeed, Plaintiff acknowledged that no specific promises were made to him regarding his pay, and that Jason told him that they could not afford to pay him more because business was down. *Id.* While Jason's actions could surely be interpreted to dissuade the truck drivers from picketing, Plaintiff offers no evidence that Jason's actions were meant to dissuade Plaintiff from filing a lawsuit.

Accordingly, Plaintiff is unable to establish the facts necessary to estop Defendants from asserting that the statutes of limitations bars some of his claims, so summary judgment is granted as to the twelfth cause of action. As a result, Plaintiff's potential recovery for unpaid wages is limited to those acts and events that occurred during the four year statutory period prior to the filing of the lawsuit.

### iv. Sixth and Eleventh Counts are Time-Barred

The sixth cause of action is for failure to furnish itemized wage statements, and the eleventh cause of action is for penalties under the California Private Attorneys General Act ("PAGA"). Defendants seek summary judgment on the grounds that the lawsuit was filed after the expiration of the applicable statutory period.

A claim seeking penalties under California Labor Code § 226(e) are governed by the one-year statute of limitations in California Code of Civil Procedure § 340(a). *See, e.g., Clemens v.*

8

1  *Hair Club for Men, LLC,* 2016 WL 1461944, at *8 (N.D. Cal. Apr. 14, 2016)(" Every decision
2  that has considered the limitations period applicable to claims for statutory damages under Section
3  226(a) has held that the one-year limitations period for claims for penalties applied.")

4  Similarly, the penalties Plaintiff seeks to recover under PAGA, California Labor Code §
5  2698, are also governed by the one year statute of limitations set forth in Section 340(a). *Thomas*
6  *v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007)(applying one-year
7  statutory period to PAGA claim, because it is for civil penalties).

8  Here, Plaintiff's employment terminated on or around February 19, 2013.  Therefore, his
9  penalty claims became time-barred on or around February 19, 2013. The lawsuit was not filed
10 until June 9, 2013, so the sixth and eleventh causes of action are time-barred.  Furthermore,
11 Plaintiff is unable to pursue a PAGA claim in a representative capacity if his own claim is time-
12 barred. *Thomas*, 527 F. Supp. 2d at 1009.

13 In light of the foregoing, Defendants' motion for summary judgment is granted as to the
14 sixth and eleventh causes of action.

### v. Failure to Pay Minimum Wage under FLSA

16 The first cause of action is for failure to pay the minimum wage under FLSA.  Defendants
17 contend that Plaintiff's alleged monthly salary satisfied the minimum wage requirement, because
18 his hourly rate of pay was $7.50. (Defs.' Mot. at 14.)  Since July 24, 2009, the federal minimum
19 wage has been $7.25 per hour.

20 In his interrogatory responses, Plaintiff claims that, during the four years period before he
21 filed this action, he received a salary of at least $2,600 per month. (Pl.'s Interrog. Resp., Grover
22 Decl., Ex. D at 7, 11.)  As a result, Defendants argue that the FLSA formula to calculate Plaintiff's
23 monthly salary into a weekly salary requires that the monthly rate be multiplied by 12 (months),
24 and divided by 52 (weeks). (Defs.' Mot. at 13 (citing 29 C.F.R. § 778.113).)  Thus, Plaintiff's
25 weekly salary was $600.  To calculate the regular hourly rate of pay, the weekly salary is divided
26 by the number of hours worked. 29 C.F.R. § 778.113(b).  The maximum number of hours Plaintiff
27 claims to have worked in a given week is 68.5 hours. (Pl.'s Interrog. Resp. at 11.)  Therefore,
28 Defendants accurately calculated Plaintiff's lowest hourly rate of pay at $8.76.

9

Plaintiff fails to address how Defendants violated the FLSA minimum wage statute, other than to generally claim that Defendants, by paying a monthly salary, manipulated the pay rate and hours to deprive him of overtime compensation. (Pls.' Opp'n at 6.) Thus, Plaintiff fails to present any evidence to set forth facts that his regular rate of pay was less than the federal minimum wage of $7.25 per hour.

Accordingly, Defendants' motion for summary judgment is granted as to the first cause of action for failure to pay the minimum wage under FLSA.

### vi. Failure to Pay Minimum Wage under California Law

The third cause of action is for failure to pay minimum wage under California law. Defendants contend that Plaintiff cannot demonstrate what he was paid, as he can neither recall key facts or dates nor did he retain records of cash payments. (Defs.' Mot. at 15.)

Indeed, Plaintiff's opposition did not squarely address how his wages violated the California minimum wage statute other than to dispute the accuracy of the pay records. At the hearing, Plaintiff appropriately argued that California law does not follow the FLSA in calculating an hourly rate based on a monthly or weekly rate. Rather, under California law, "a salaried employee's 'regular rate of pay' is calculated 'by dividing the total weekly salary by no more than 40 hours, regardless of the number of hours actually worked.'" *Sillah v. Command Int'l Sec. Serv.*, --- F. Supp. 3d ---, 2015 WL 9302925, at *13 (N.D. Cal. Dec. 22, 2015) (quoting *Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487, 1490 (1989)); Cal. Labor Code § 515(d)(2)(" Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."). Here, since overtime hours are not used in computing the regular rate of pay, Plaintiff's weekly salary of $600 results in a regular hourly rate of $15.00. *See Ghory,* 209 Cal. App. 3d at 1490.

Pursuant to California Labor Code § 1194, the failure to compensate an employee for all hours worked is a violation of the minimum wage statute even if the "average hourly rate [ ] was higher than the applicable minimum wage." *See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 46-47 (2013)(citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 319-20 (2005)). Here, Plaintiffs alleges that he was not paid for all hours worked, because the wage statements

10

were inaccurate. (Pls.' Opp'n at 8.) Specifically, Plaintiff testified that his time records showing that he generally started work between 9:00 and 9:30 and finished around 5:00 p.m. were inaccurate, because the deliveries often took longer, sometimes resulting in working until 9:00 or 10:00 p.m. (Pls.' Lin Dep. at 173:18-175:10.) Plaintiff testified that, at most, he would get off at 5:00 on one or two days per week, but that "it was impossible to get off at 5:00 every day." (Pls.' Lin Dep. at 175:2-5, 175:6-10.)

Under California law, an employer is required to retain "[t]ime records showing when the employee begins and ends each work period," and total wages paid per payroll period and applicable rates of pay for at least three years. *See* CAL. INDUS. WELFARE COMM'N, WAGE ORDER NO. 9-2001, "TRANSP. INDUS." ¶ 7 (2014). If an employer's records are inaccurate or inadequate, an employee may carry his burden if he proves that he performed work for which he was improperly compensated. *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986)(quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). At hearing, Defendants conceded that they did not retain records of the cash payments, as the cash payments were written on the envelope in which the wages were furnished. Since Win Woo and Jason have withdrawn their argument that they were not joint employers, for the purposes of this motion, they would have been jointly responsible for records retention. (*See* Defs.' Am. Reply at 2.) Thus, it is undisputed that Defendants' records are inaccurate, and, at this juncture, Plaintiff need only present evidence that he worked hours for which he was not properly compensated, which he has satisfied by way of his deposition testimony.

Accordingly, a question of fact exists as to whether Plaintiff was paid the minimum wage under California law, such that summary judgment must be denied as to the third cause of action.

### vii. Second and Fourth Causes of Action

Defendants seek summary judgment as to the second (failure to pay overtime wages) and the fourth causes of action (failure to pay overtime wages under California law) on the grounds that Plaintiff cannot recall what he was paid, when his pay changed, and what he was paid. (Defs.' Mot. at 15.)

In opposition, Plaintiff claims that the time records were inaccurate, and that Defendants

1 frequently misstated the overtime pay, as evidenced by the pay records. (Pls.' Opp'n at 8-9.) As for the overtime causes of action, the Court agrees that the paystubs, when viewed in the light most favorable to Plaintiff, indicate that he may not have always been paid overtime. For example, during the October 1-15, 2011 pay period, Plaintiff worked 88:57 hours and his pay rate was $12.75, but there is no indication that he was paid overtime for any hours worked in excess of forty hours per week or, under California law, in excess of eight hours in a single day. (Check No. 4435, T. Zheng Decl., Ex. D at 51.) Thus, viewing the pay records in the light most favorable to Plaintiff, there is sufficient evidence to create a dispute of material fact as to whether he was paid overtime during the statutory period. Therefore, summary judgment is denied as to the second and fourth causes of action.

        **viii.    Fifth and Tenth Cause of Action**

Defendants contend that the fifth and tenth causes of action are derivative of Plaintiff's wage claims. (Defs.' Mot. at 17.) The fifth cause of actions seeks to recover for the failure to pay wages upon termination. Defendants argue that Plaintiff cannot establish that any wages are due, presumably due to his faulty recollection. *See id.* Plaintiff does not address this in his opposition, so summary judgment is granted as to the fifth cause of action.

The tenth cause of action for unfair competition relies on the assumption that Plaintiff's wages were not paid. California Business and Professions Code § 17200 concerns unfair competition and prohibited activities and states that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A business practice is "unlawful," in violation of the California Unfair Competition Law (UCL), if it violates another state or federal law; the UCL "borrows" violations of other laws and treats them as independently actionable. *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

Defendants contend that Plaintiff's inability to establish his wage claims is fatal to the tenth cause of action. (Defs.' Mot. at 17.) Plaintiff similarly fails to address the tenth cause of action in his opposition. Notwithstanding, since the wage claims have survived, the motion for summary judgment is denied as to the tenth cause of action.

12

### ix. Unlawful Deduction of Wages

The seventh cause of action is for the unlawful deduction of wages under California Civil Code § 221. Defendants argue that summary judgment is appropriate because Plaintiff cannot identify any improper deductions from his wages. (Defs.' Mot. at 16; Defs.' Am. Reply at 7.) The undersigned, however, need not address whether Plaintiff provides any facts to support such a deduction, because, as pled, this cause of action pertains only to Plaintiff Liu's claim that he was wrongfully deducted wages due to the alleged loss of a box of shrimp. (FAC ¶¶ 47-51.) There are no allegations that Plaintiff Lin suffered any illegal deductions. Therefore, Defendants' motion for summary judgment as to Lin's ability to recover under this cause of action is denied, because this cause of action only pertains to Plaintiff Liu.

### x. Breach of Contract

Plaintiff's eighth cause of action is for breach of contract for failure to pay Plaintiff $2,600 per month based on an oral contract. (FAC ¶¶ 54-55.) Defendants argue that summary judgment is appropriate because Plaintiff could not recall key facts or dates to support this claim. (Defs.' Mot. at 16.) In opposition, Plaintiff solely relies on the fact that his monthly salary was changed to an hourly rate.

Plaintiff testified that, when he was hired, the agreement made with Jason was that he would drive a delivery truck for $2,600 per month plus housing. (Pls.' Lin Dep. at 33:18-36:18.) Plaintiff testified that his paycheck had always shown an hourly rate, but that he was paid the difference in cash, so that he would receive a total of $1,300 per semimonthly paycheck. (Pls.' Lin Dep. at 50:21-53:12.) He could not recall when his pay switched to an hourly rate, but was informed that the change would result in him being paid about the same amount, but his pay was not set. (Defs.' Lin Dep. at 78:11-14; Pls.' Lin Dep. at 95:6-96:23, 101:14-102:4.) An employer of an at-will employee can unilaterally change the compensation agreement without being in breach of contract, because the employee impliedly accepts such modifications by continuing employment after the modification is made. *DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629, 636 (1997). Since Plaintiff stayed after his compensation was changed to the hourly rate, he accepted the modified terms.

Additionally, Defendants argue that they are not proper parties to these claims, because "it is clear that Safety Trucking, LLC was paying all of Mr. Lin's wages," so Safety Trucking should be held solely liable to the extent that there was a breach. (Defs.' Mot. at 17.)

Despite the denial of summary judgment on the alter ego theory, Plaintiff has not identified any facts to support a breach of contract claim. To the contrary, the undisputed facts show that Plaintiff was notified of the change to an hourly rate, such that his continued employment is tantamount to an acceptance of the modified terms, which precludes any claim for breach of contract. Thus, summary judgment is granted as to Lin's eighth cause of action.

### xi. Failure to Provide Personnel Records

The ninth cause of action is for failure to provide personnel records under California Labor Code § 1198.5. Section 1198.5 generally requires employers to make personnel records available for inspection to the current or former employee, or his or her representative, within 30 calendar days from the date the employer receives a written request. Cal. Lab. Code § 1198.5(b)(1).

On April 16, 2014, Plaintiffs' counsel sent a written request for Plaintiff's personnel records to Win Woo and Safety Trucking. (FAC, Ex. A.) Defense counsel claims to have first communicated with Plaintiffs' counsel on April 29, 2014, and that she requested his client's written authorization during a phone call less than one week later. (Grover Decl. ¶¶ 2-3.) On May 19, 2014, Defense counsel requested written authorization from Plaintiffs' counsel's clients. (Decl. of X. Young Lai, "Lai Decl.," Dkt. No. 147-1, Ex. J at 10.)

Defendants contend that Labor Code § 1198.5(n) precludes this cause of action, because the filing of the lawsuit extinguished Plaintiff's right to obtain his personnel file. (Defs.' Mot. at 17.) This misstates the statute. While Plaintiff's right to obtain his file within 30 days ceases during the pendency of the litigation, Plaintiff's request was made before the lawsuit was filed. Indeed, the statute provides that Plaintiff may recover a penalty of $750 from the employer if the employer fails to furnish the records. Cal. Lab. Code § 1198.5(k). Thus, the filing of the lawsuit does not automatically defeat this claim under California law.

Here, Plaintiff requested his personnel files through his representative on April 16, 2014. If Defendants received the written request the day it was dated, the personnel file would have had

14

to have been furnished within 30 days or May 16, 2014. Defendants argue that they asked for verification in writing before the 30 days elapsed. The letter from Defense counsel, however, is dated May 19, 2014, which was more than 30 days after it was dated. While employers may take reasonable steps to verify the identity of an employee or his authorized representative, a question of fact exists as to whether Defendants complied with the statute because the May 19, 2014 letter is dated more than 30 days after the request. *See* Cal. Lab. Code § 1198.5(e).

Thus, Defendants' motion for summary judgment as to the ninth cause of action is denied.

### B. Defendants' Objections

Defendants raise numerous objections to both Plaintiffs' counsel and Plaintiff Liu's declarations. (Defs.' Am. Reply at 6-8.) Plaintiff Lin did not file a supporting declaration.

#### i. Objections to Counsel's Declaration

##### a. Exhibit A

Exhibit A is a purported settlement agreement in the matter of *Wang v. Safety Trucking, LLC*. Defendants seek to exclude this exhibit on grounds that it is inadmissible pursuant to the hearsay rule. (Defs.' Am. Reply at 6.) Defendants also argues that the document is not properly authenticated, that Mr. Lai lacks personal knowledge of the document or that it is what he claims it to be, and that a settlement agreement in a matter with different plaintiffs, in which there is no admission of liability, is irrelevant to the instant litigation. *Id.* at 6-7. The Court sustains the objection on the hearsay, authenticity, and foundational grounds, so the settlement agreement is not admissible for the purposes of this motion.

##### b. Exhibits B, C, D

Exhibits B, C, and D are deposition transcripts. Defendants seek to exclude the highlighted portions, which, they contend, sometimes include only the questions and not testimony, are not identified as supporting or challenging any facts presented by the Motion for Summary Judgment. (Defs.' Am. Reply at 7.) As a result, Defendants argue that the transcripts are not relevant.

The Court disagrees. The transcripts are complete and are authenticated, and, to the extent that the highlighted portions are incomplete, the undersigned has gone beyond those excerpts.

15

1 Thus, this objection is overruled.

        c. <u>Exhibits E, F, G, H, I, K</u>

Exhibits E, F, G, H, I, and K are purported records of Safety Trucking, LLC. Exhibit E consists of the signature card and representative checks of Safety Trucking LLC from its account at United Commercial Bank. Exhibit F is a copy of Win Woo Trading LLC's Routing List that was produced by Safety Trucking in discovery, which was stapled to the back of a stack of standardized contracts between the two corporate defendants, with the translation of the first page of the documents. Exhibit G is a representative record of payments collected by Plaintiffs for Win Woo Trading, indicating a 6% commission, which was produced by Safety Trucking, with a translation. Exhibit H is a copy of a representative contract between the two corporate defendants. Exhibit I is an invoice and a check of $240 for services provided by Safety Trucking to a company. Exhibit K is a copy of a wage withholding record of Liu.

Defendants seek to exclude the records as inadmissible hearsay. These appear to be Safety Trucking's records, and are, therefore, admissible as business records if the declaration lays the foundation. Counsel failed to lay the foundation for Exhibits E, H, I, and K, because he does not describe how he obtained the documents.

Defendants also seek to exclude the documents on the grounds that they are not properly authenticated under Federal Rule of Evidence 901. (Defs.' Am. Reply at 7.) Specifically, Defendants contend that Mr. Lai lacks personal knowledge of the documents, that they are what he claims them to be, when or how they were created, what information is recorded in them, or for what purpose they were used. *Id.*

Exhibit E consist of cancelled checks and signatory cards from Safety Trucking's bank, rendering them self-authenticating. Fed. R. Evid. 902(9); *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). Additionally, the custodian of records at East West Bank provided an authenticating declaration. (Lai Decl., Ex. E at 28.) Counsel's declaration stated that Exhibits F and G were produced during discovery by Safety Trucking. (Lai Decl. ¶¶ 7-8.)

Accordingly, this objection is sustained as to Exhibits H, I, and K, and overruled as to Exhibits E, F, and G.

####     d.  Exhibit J

Exhibit J consists of several pre-filing communications between counsel. Defendants seek to strike the documents on the grounds that they contain settlement discussions which are not admissible either to prove or disprove the validity or amount of a disputed claim. (Defs.' Am. Reply at 7.) While settlement discussions are confidential, the Court declines to exclude the entire exhibit. Rather, while the portions pertaining to settlement negotiations are objectionable, the portions pertaining to Plaintiffs' counsel's attempts to obtain his clients personnel files are admissible.

Thus, Defendants' objection is sustained only as to the settlement communications.

####     e.  Exhibit M

Exhibit M is a print out from the United States Department of Transportation's website regarding a business with a name similar to Win Woo Trading, LLC, but which is located La Puente, California. Defendants seek to exclude this document because it concerns a different business entity, and is, therefore, not relevant. (Defs.' Am. Reply at 7.) Further, Defendants contend that Plaintiff erroneously asserts that this printout regarding an unrelated business demonstrates that Jia Jing Zheng's testimony that Win Woo Trading, LLC did not own trucks is perjurious. *Id.* The Court agrees, as there is no indication that this is a related entity. Therefore, Defendants' objection is sustained.

### ii.    Objections to Kuang Xuan Liu's Declaration

Additionally, Defendants object to Exhibits F, G, and K as supported by the declaration of co-Plaintiff Kuang Xuan Liu. As stated above, these documents are purported records of Safety Trucking, LLC. Defendants object on hearsay grounds, and on the grounds that Plaintiff Liu is unable to properly authenticate the documents. The Court agrees. These objections are sustained.

## IV.    CONCLUSION

In light of the foregoing, Defendants Win Woo Trading, LLC, Jia Jing Zheng, and Mindy Fang's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Specifically, the Court grants the motion as it pertains to the first, fifth, sixth, eighth, eleventh, and twelfth causes of action. Summary judgment is denied on the theory of alter ego, that Mindy Fang

1 was not a joint employer, and the second, third, fourth, seventh, ninth, and tenth causes of action.

2      IT IS SO ORDERED.

3 Dated: June 15, 2016

                                                                                                                                                        _____

4                                                             KANDIS A. WESTMORE

5                                                            United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28