UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUANG XUAN LIU, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>WIN WOO TRADING, LLC, et al.,<br><br>        Defendants. | Case No. 14-cv-02639-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS AGAINST SAFETY TRUCKING, JIA TUN ZHENG, AND COUNSEL**<br><br>Re: Dkt. No. 128 |

On February 11, 2016, Plaintiffs Kuang Xuan Liu and Pei Xiong Lin filed a motion for sanctions against Defendants Safety Trucking, LLC, Jia Tun Zheng, and counsel Leon Jew for alleged abuses of the discovery process.

On May 5, 2016, the Court held a hearing, and, after careful consideration of the parties' arguments and moving papers, and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for sanctions.

## I. BACKGROUND

Defendant Safety Trucking, LLC is a licensed trucking company that primarily provides services to Win Woo Trading, LLC, a grocery wholesaler and distributor that sells to Chinese restaurants. Defendant Jia Tun Zheng (or "Tun") is the managing partner and majority owner of Safety Trucking. His brother, Jia Jing Zheng ("Jason"), is the managing partner of Win Woo.

Plaintiffs Kuang Xuan Liu and Pei Xiong Lin worked as truck drivers for Safety Trucking making deliveries on behalf of Win Woo. On June 9, 2014, Plaintiffs filed this action against Win Woo Trading, LLC, Safety Trucking, LLC, and individuals Jia Jing Zheng, Jia Tun Zheng, and Mindy Fang alleging violations of the Fair Labor Standards Act and the California Labor Code.

On January 22, 2016, the Plaintiffs and Defendants Safety Trucking and Tun filed three amended joint letters regarding Safety Trucking's grossly deficient responses to Plaintiffs' special interrogatories, requests for production of documents, and requests for admission. (Dkt. Nos. 106-108.) Therein, Defendants repeatedly took the untenable position that Safety Trucking's corporate knowledge was limited to Tun's personal knowledge, and that Plaintiffs could depose him to explain the business operations. (*See* Dkt. No. 106 at 3.) Also, for the first time in the amended joint letter regarding the requests for production, Defendants claimed that several boxes of records disappeared in June 2013 during Safety Trucking's move to its current business location. *Id.*

On February 11, 2016, Plaintiffs filed a motion for sanctions against Defendants Safety Trucking, Tun, and counsel Leon Jew for alleged abuses of the discovery process. On February 25, 2016, Defendants filed an opposition. (Defs.' Opp'n, Dkt. No. 140.) On March 3, 2016, Plaintiffs filed a reply. (Pls.' Reply, Dkt. No. 144.)

On February 16 and 17, 2016, the Court issued orders on the January 22 joint letters, and ordered Safety Trucking to supplement virtually all of the disputed discovery devices, and required that Safety Trucking answer based on its corporate knowledge rather than Tun's personal knowledge. (*See* Dkt. Nos. 130-132.) Additionally, Tun was ordered to submit a declaration, under penalty of perjury, regarding the allegedly lost and/or stolen documents. (Dkt. No. 132 at 3.) The Court reserved the issue of whether sanctions should be imposed in conjunction with those discovery violations, and instead opted to consider whether sanctions were appropriate in connection with the instant motion for sanctions. (Dkt. No. 130 at 2-3; Dkt. No. 131 at 5; Dkt. No. 132 at 7.)

On April 24, 2016, Plaintiffs and Defendant Safety Trucking filed a joint letter in which Plaintiffs sought to compel the production of original copies of time reports for Plaintiffs and other truck drivers, which bear the signature of the particular driver, dated prior to November 16, 2011. (Dkt. No. 171 at 1.) On April 28, 2016, the Court ordered Safety Trucking to produce the original time reports and original corrected time reports for all truck drivers, dated prior to November 16, 2011, for inspection and copying at a mutually agreeable location within 14 days, or May 12, 2016. (Dkt. No. 173.)

On May 5, 2016, the Court held a hearing on the motion for sanctions. During the hearing, Mr. Jew vigorously defended his clients. Mr. Jew then informed the Court that Defendants had terminated his legal services effective the end of the business day, and that he did not know whether the document inspection, set for May 10, 2016, would go forward as scheduled.

On May 9, 2016, the Court issued an order requiring the parties to file a joint status report to inform the court whether the inspection took place, and whether the production was complete. On May 16, 2016, the parties reported that the inspection took place as scheduled, but that the documents were the same documents previously produced. (Dkt. No. 182.) Mr. Jew, who was still counsel of record for Safety Trucking, declared that these were the only documents that Safety Trucking has. (Decl. of Leon Jew, Dkt. No. 182-1 ¶ 7.)

On May 9, 2016, Plaintiffs' counsel filed a supplemental declaration concerning his legal experience in support of the motion for sanctions. (Supplemental Decl. of X. Young Lai, "Suppl. Lai Decl.," Dkt. No. 180.)

On May 31, 2016, Safety Trucking and Jia Tun Zheng filed their motions for substitution of counsel. (Dkt. Nos. 183 & 184.) To date, the Court has not relieved Mr. Jew of his representation.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 37 allows the court to sanction a party that fails to obey a discovery order by striking pleadings, staying further proceedings pending compliance, or terminating the action by default of dismissal. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii)-(iv). Since dismissal and default are such drastic remedies, they may be ordered only in extreme circumstances, such as where there is willful disobedience or bad faith. *See In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996). "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." *Conn. Gen'l Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Only 'willfulness, bad faith, and fault' justify terminating sanctions." *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)). All that is required to show willfulness or bad faith is "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th

3

Cir. 1993). "An explicit finding of willful noncompliance is necessary. It will not be inferred from findings that the noncompliance was 'unexcused' or 'unjustified.'" *Newpark Mall LLC v. Crge Newpark Mall*, LLC, No. 15-CV-0817-PJH, 2016 WL 742009, at *2 (N.D. Cal. Feb. 25, 2016)(citing Schwarzer, et al., Fed. Civ. Proc. Before Trial (2015 ed.) § 11:2421). Sanctions are also available in connection with discovery motions and for a party's failure to admit. Fed. R. Civ. P. 37(a)(5), (c).

Federal courts have the inherent authority to impose sanctions for misconduct, which may include an award of attorneys' fees, against attorneys and parties who "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or acted in "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Primus Automotive Financial Svcs, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("sanctions under the court's inherent powers may take the form of attorney's fees"). Bad faith is tested objectively. "A district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3rd Cir. 1986). An attorney's fee award under a court's inherent power is intended to vindicate judicial authority, not to provide a substantive remedy to an aggrieved party. "The wrong was to the court." *Mark Industries,* 50 F.3d, 730, 733 (9th Cir. 1995).

Generally, courts may impose sanctions against an attorney personally. The court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996) (citing *Trust Corp., v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). Furthermore, the determination to sanction is subject to a court's sound discretion. *Dahl v. City of Huntington Beach,* 84 F.3d 363, 367 (9th Cir. 1996). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles,* 879 F.2d 481, 490 (9th Cir. 1988).

### III. DISCUSSION

Plaintiffs seek both terminating and monetary sanctions against Defendants Safety Trucking, LLC, Tun Zheng, and counsel Leon Jew for alleged abuses of the discovery process.

### A. Alleged discovery abuses

Plaintiffs' motion complains of a litany of discovery abuses committed by Safety Trucking. While the motion is disjointed, Plaintiffs essentially complain of Defendants' general untruthfulness and their failure to timely produce documents.

#### i. Defendants' general untruthfulness

Plaintiffs argue that Defendants have purposefully withheld evidence and misrepresented themselves throughout the discovery process. (Pls.' Mot. at 1.) As an example, Plaintiffs point to Safety Trucking's initial response that Jason did not sign any of Safety Trucking's checks, which was later contradicted by bank records obtained by subpoena from East West Bank. *Id.* at 9. In opposition, Defendants contend that this argument is faulty "because discovery was ongoing and Safety Trucking reserved the right to amend such responses in a discovery investigation." (Defs.' Opp'n at 4.) That discovery is ongoing does not permit a party to lie. It was only after the bank records were obtained by subpoena that Defendants' changed their story and amended their discovery responses.

Moreover, Defendants repeatedly denied that they had documents concerning the commissions paid for drivers to compensate them for collecting payments on behalf of Win Woo Trading. (Pls.' Mot. at 8.) To the contrary, Plaintiffs contend that Defendants inadvertently produced some documents despite representing that they had no such documents in their possession. *Id.* at 8-9. In opposition, Defendants argue that Plaintiffs have not been extraordinarily prejudiced due to any deprivation of evidence because Plaintiffs have sufficient evidence to support their case, such as Plaintiffs' testimony. (Defs.' Opp'n at 7.) The Court disagrees, and Plaintiffs are surely prejudiced by a lack of evidence concerning all sources of their wages and who was paying them. Furthermore, the refusal to admit that documents exist, even after some types of documents were inadvertently produced, is evidence of bad faith. *See* discussion *infra* Part III.B.i.c.

#### ii. Failure to timely produce documents

Plaintiffs contend that Defendants have failed to produce several categories of documents, including those created after June 2013, the deposition transcripts from the prior state court action,

and bank records.

As an initial matter, as late as January 22, 2016, Defendants advanced the untenable position that Safety Trucking's corporate knowledge was limited to Tun's personal knowledge. Tun signed verifications to the interrogatory responses and the responses to the requests for admission. (*See* Pls.' Mot., Ex. I.)  Mr. Jew signed the responses to the requests for production of documents. *See id.*

### a. Records lost in the June 2013 move

Defendants contend that Tun did not discover that "several boxes of records were lost during the 2013 move until late December 2015 in his efforts to exhaust all places that the records could be placed." (Defs.' Opp'n at 9.)  Essentially, Defendants have admitted that they did not fulfill their discovery obligations, because this "exhaustive" search should have occurred when the discovery was first propounded.  That Defendants have an obligation to supplement their responses upon the discovery of new information under Rule 26 is not a license to perform a cursory investigation.  And yet a cursory investigation is, at best, admittedly what occurred.

While the Court, at this juncture, will refrain from passing judgment on Defendants' claim that records were lost, the failure to conduct an adequate search is sanctionable.

### b. Transcripts of Depositions from Prior State Court Action

Plaintiffs contend that Defendants' refusal to produce copies of depositions from the prior court action was prejudicial, because they were necessary to conduct an effective deposition. (Pls.' Mot. at 9.)  The Court disagrees.  While the failure to produce these documents was improper if they were in Defendants' possession, a copy of a deposition in a prior case, while helpful, does not prevent an effective deposition from going forward.

### c. Bank account records

As discussed above, Defendants first asserted that Jason did not sign any checks issued by Safety Trucking. (Pls.' Mot. at 9.)  Later, Defendants amended to state that Jason signed some checks, but refused to turn over copies. *Id.*  It was not until Plaintiffs subpoenaed the records from the now-closed checking account at East West Bank, over Defendants' unsuccessful motion to quash, that it became evident that Jason signed most of the checks issued by Safety Trucking

between 2009 and early 2012. *Id.* The case was filed in 2014, and Safety Trucking should have produced copies of those bank documents in its possession, including those that were in Jason's possession.

**B.  Sanctions**

    **i.  Availability of Sanctions**

        a.  <u>Violation of a Court Order</u>

A threshold requirement for Rule 37(b)(2) sanctions is the existence of a court order. *See, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("Rule 37(b)(2)[ ] require[s] that there be some form of court order that has been disobeyed"); *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012). Here, Defendants contend that they did not violate any court order.[1] (Defs.' Opp'n at 2.) On September 8, 2015, Defendants were ordered to provide supplemental responses to Plaintiffs' requests for production of documents, requests for admission, and special interrogatories within 14 days. (Dkt. No. 79.) For the first time in their reply, Plaintiffs argue that Defendants violated the court order by failing to furnish supplemental responses until December 15, 2015. (Pls.' Reply at 1.) Since these facts were not raised in the motion for sanctions, the Court declines to impose sanctions based on the potential violation of the September 8 order.

        b.  <u>Rule 37(a)(5)</u>

Notwithstanding, Defendants may be sanctioned under Rule 37(a)(5), based on the granting of Plaintiffs' requested relief in the January 22, 2016 joint letters. Thus, Defendants or their counsel, or both, may be required to pay the movant's reasonable expenses incurred, including attorney's fees, in conjunction with the filing of the joint letters. Fed. R. Civ. P. 35(a)(5)(A).

In ruling on the January 22 amended joint letters, the Court ordered Safety Trucking to

---

[1] Defendants are mistaken in their belief that the violation of a court order is required to impose sanctions under Rule 37. (Defs.' Opp'n at 2.) For example, sanctions may be imposed for failure to admit. Fed. R. Civ. P. 37(c). Also, reasonable attorneys' fees and costs may be imposed on the party whose conduct necessitated a motion to compel, or, for our purposes, a joint letter, if the opposing party's nondisclosure, response, or objection was not substantially justified. Fed. R. Civ. P. 37(a)(5)(A).

7

supplement virtually all of the disputed discovery responses, and answer based on its corporate knowledge rather than Tun's personal knowledge. (*See* Dkt. Nos. 130-132.) At the time, the Court reserved the issue of whether sanctions should be imposed in conjunction with the joint letters, so that it could be considered in connection with the instant motion. (Dkt. No. 130 at 2-3; Dkt. No. 131 at 5; Dkt. No. 132 at 7.)

Furthermore, no exceptions exist that would preclude an award of expenses in relation to the joint letters. The parties met and conferred before the filing of those letters, Defendants were not acting in good faith, and other circumstances do not exist to make an award of expenses unjust. *See* Fed. R. Civ. P. 35(a)(5)(A)(i-iii); *see* discussion *infra* Part III.B.ii. Thus, sanctions are available in connection with Defendants' conduct which necessitated the January 22, 2016 joint letters.

c. Rule 37(c)

Moreover, Defendants may be sanctioned for failure to admit in response to Plaintiffs' propounded requests for production of documents pursuant to Rule 37(c)(2). Defendants' repeated failure to admit dates back to its initial responses on May 21, 2015, which were verified by Tun. For example, Safety Trucking failed to admit to Request for Admission No. 18, which sought to verify receipt of the April 2014 letter sent by Plaintiff's counsel to Win Woo and Safety Trucking requesting Plaintiffs' employment records on the grounds that Tun did not remember the letter. (*See* Dkt. No. 74 at 3.) The letter, and then-defense counsel's[2] response, were later produced in connection with Win Woo's motions for summary judgment. (Dkt. No. 147-1, Ex. J.)

Plaintiffs' Request for Admission Nos. 2 and 3 asked Safety Trucking to "[a]dmit JIA JING ZHENG [Jason] signed some paychecks issued by YOU [Safety Trucking] to [Plaintiffs] in calendar years 2009 through 2014." (Dkt. No. 107 at 10.) On May 21, 2015, Safety Trucking denied that Jason signed checks on behalf of Safety Trucking. (Dkt. No. 74 at 9.) On December 23, 2015, Safety Trucking amended its responses to admit that Jason signed some checks on behalf of Tun, but qualified the admission by stating that Jason only signed checks "that were in

---

[2] At the time, both Win Woo and Safety Trucking were represented by Margaret Grover, who currently represents the Win Woo Defendants.

8

urgent need." (Dkt. No. 107 at 17.)

These are two of several examples of Defendants' failure to admit. Whether the failure to admit was a result of failing to answer pursuant to corporate knowledge is immaterial, as it is undisputed that Plaintiffs were required to engage in additional discovery, including motion practice, due to Safety Trucking's conduct. Thus, sanctions may be imposed based on Safety Trucking's failure to admit.

### d. Court's inherent authority

Federal courts have the inherent authority to impose sanctions for misconduct, which may include an award of attorneys' fees, against attorneys and parties who "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or acted in "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Here, Defendants have clearly acted in bad faith. *See* discussion *supra* Parts III.B.i.a-c, *infra* Part III.B.ii. The wrongs committed, however, were against Plaintiffs, rather than the Court, and, thus, an award under the Court's inherent authority is not appropriate. *See Mark Industries,* 50 F.3d, 730, 733 (9th Cir. 1995).

### ii. Defendants acted in bad faith.

The Court finds that Defendants' repeated efforts to evade their discovery obligations was both willful and in bad faith. Defendants concede that an exhaustive search of documents and records was not conducted until December 2015, and that was only after they were ordered to do so by the Court. (Defs.' Opp'n at 9.) Furthermore, Safety Trucking repeatedly lied in its discovery responses regarding Jason Zheng's involvement, and only changed its position after bank records obtained by third party subpoena, which Defendants unsuccessfully attempted to quash, showed that Jason was the primary account holder on Safety Trucking's prior checking account and had signed several checks on behalf of the company. (*See* Defs.' Opp'n at 4.) Lastly, Defendants' failure to admit, particularly in regards to refusing to admit to receiving the April 2014 letter from Plaintiffs' counsel, is tantamount to bad faith when the reason is that Tun, himself, does not speak, read, or write English. (*See* Dkt. No. 107 at 3.) In totality, Defendants' conduct, which was sometimes deceitful, was clearly in bad faith and warrants sanctions.

///

### iii. Appropriate Sanctions

After determining that sanctions are appropriate, the Court next considers the propriety of the sanction imposed.

#### a. Monetary Sanctions

As the Court indicated at the hearing, monetary sanctions are appropriate in light of Defendants' abuses of the discovery process, which the Court finds were done in bad faith. *See* discussion *supra* Part III.B.ii. Specifically, the Court awards monetary sanctions—attorney's fees and costs—under of Rule 37(a)(5) and Rule 37(c)(2). *See* discussion *supra* Parts III.B.i.b-c. This includes those reasonable expenses, including attorney's fees, incurred in proving those facts that Safety Trucking failed to admit. Fed. R. Civ. P. 37(c)(2).

#### b. Terminating Sanctions

Plaintiffs seek terminating sanctions for the actions outlined above, because Safety Trucking's actions have prejudiced Plaintiffs' case. (Pls.' Mot. at 10.) "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Entry of a default judgment is permitted when the disobedient party has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). A terminating sanction, however, may only issue if the violation or abuse is willful, in bad faith, or the fault of the party. *Id.* "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (quoting *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994)).

The court must weigh five factors in determining whether the terminating sanction is justified: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Leon, 464 F.3d at 958. Finally, "due process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that

1    the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch,*

2    *Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J.*

3    *Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

4          Here, Plaintiffs have not been diligent in pursuing discovery generally, even after learning

5    that Safety Trucking was not being forthcoming.  Plaintiffs were advised on October 6, 2015, that

6    if Safety Trucking did not cooperate with discovery, that they should file a motion for sanctions.

7    (10/6/15 Minute Entry, Dkt. No. 89.)  Furthermore, Plaintiffs did not notice either Tun or Jason's

8    depositions prior to the discovery cut-off, and had to obtain leave of court. (*See* 3/8/16 Minute

9    Entry, Dkt. No. 155.)  That Plaintiffs are now prejudiced by the failure to obtain sufficient

10   responses to their discovery devices is partly due to their own actions.  Thus, terminating sanctions

11   are not appropriate.

           c.    <u>Available Relief for Spoliation of Evidence</u>

13         Plaintiffs argue that Defendants engaged in the spoliation of evidence by failing to produce

14   any time cards or reports relating to other drivers, and no records of cash payments for any of the

15   drivers. (Pls.' Mot. at 6.)  Spoliation "refers to the destruction or material alteration of evidence or

16   to the failure to preserve property for another's use as evidence in pending or reasonably

17   foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing

18   *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  Evidence of spoliation

19   may be grounds for sanctions, which may include an adverse inference instruction. *Apple Inc. v.*

20   *Samsung Electronics Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citing *Akiona v. United*

21   *States*, 938 F.2d 158, 161 (9th Cir. 1991)).

22         While the Ninth Circuit has not set forth the standard for when an adverse inference

23   instruction is appropriate, courts in this district have adopted the Second Circuit's three-part test,

24   which provides that "a party seeking an adverse inference instruction based on the destruction of

25   evidence must establish[:] (1) that the party having control over the evidence had an obligation to

26   preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state

27   of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a

28   reasonable trier of fact could find that it would support that claim or defense." *Residential Funding*

11

1 *Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)); *see, e.g., Io Grp. Inc. v. GLBT Ltd.*, No. C-10-1282 MMC DMR, 2011 WL 4974337, at *8 (N.D. Cal. Oct. 19, 2011); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2198257, at *2 (N.D.Cal. June 6, 2011); *World Courier v. Barone*, No. C 06–3072 TEH, 2007 WL 1119196, at *1 (N.D.Cal. Apr. 16, 2007); *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060, 1078 (N.D.Cal. 2006); *Hamilton v. Signature Flight Support Corp.*, No. C 05–0490 CW(MEJ), 2005 WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005); *Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012).

### 1. Duty to Preserve Relevant Evidence

Defendants argue that they were unaware that the documents were relevant before they were lost or destroyed, because the case was filed a year after the June 2013 office move. (Defs.' Opp'n at 9.) Generally, the duty to preserve arises at the time a potential claim is identified. *In re Napster, Inc. Copyright Litig.,* 462 F. Supp. 2d at 1067; *Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012). Here, however, under California law, Defendants had an independent duty to retain "[t]ime records showing when the employee begins and ends each work period," meal periods, daily hours worked, and total wages paid per payroll period and applicable rates of pay for at least three years. *See* CAL. INDUS. WELFARE COMM'N, WAGE ORDER NO. 9-2001, "TRANSP. INDUS." § 7 (2014). "All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year. . . ." *Id.* at § 7(C).

There is no dispute that Defendants failed to preserve or retain the requisite employment records under state law, as Defendants claim that several boxes of records were lost during the June 2013 move.

### 2. Defendant's Requisite State of Mind

Defendants argue that the fact that the instant litigation was not foreseeable precludes a determination that Safety Trucking willfully engaged in spoliation. (Defs.' Opp'n at 9.) This misstates Defendants' obligation to preserve, because "[a] party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to

United States District Court
Northern District of California

the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)(quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

Here, however, Defendants not only lost or destroyed the original time records, but admitted at the hearing that some of those same time records were altered to "correct" the name of the employer, as they erroneously listed Win Woo, rather than Safety Trucking, as the employer. Even if those records were corrected, the originals should have been retained under California law. Furthermore, in March 2012, all of the defendants were named in a similar wage and hour action in Alameda Superior Court brought by two former truck drivers. *Wang v. Win Woo Trading, LLC, et. al.*, RG 12622702 (Mar. 23, 2012). Thus, they should have known that employment records were relevant to litigation concerning their employment practices.

While Defendants' substantially delayed awareness of the "lost or stolen" documents is certainly suspect, the Court declines to issue an adverse inference instruction based on records that may have been lost during an office move without an explicit finding of bad faith.

In light of the foregoing, an adverse inference instruction is not appropriate to explain the absence of employment records. Notwithstanding, the Court will certainly entertain motions in limine to exclude altered or corrected time records for the purposes of showing that the defendants were not joint employers.

### C. Reasonable Attorney's Fees and Costs

Plaintiffs' counsel billed a total of 76.1 hours in connection with discovery disputes arising from Safety Trucking's inadequate responses from July 9, 2015 to present. (*See* Suppl. Lai Decl., Ex. B.)

Courts in the Ninth Circuit calculate an award of attorneys' fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). A party seeking attorneys' fees bears the burden of demonstrating that the rates requested are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 980 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). Typically, affidavits of counsel "regarding prevailing

13

1  fees in the community and rate determinations in other cases . . . are satisfactory evidence of the

2  prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

3  (9th Cir. 1990) (citation omitted).  The "community is the forum in which the district court sits."

4  *Camacho*, 523 F.3d at 979 (citation omitted).

### i. Reasonableness of the Hourly Billing Rate

Plaintiffs bear the burden of showing that Mr. Lai's hourly rate is reasonable.  Mr. Lai is a solo practitioner who was first licensed in Wyoming in 2008, and has been practicing in California since 2011. (Suppl. Lai Decl. ¶¶ 3, 5.)  His practice predominantly consists of labor and employment cases. *Id.* at ¶ 6.  Mr. Lai's hourly rate is $250 per hour. *Id.* at ¶ 7.

Courts "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).  Mr. Lai has been licensed to practice law for eight years, and has been practicing labor and employment law in California for five years. The Court is aware of the prevailing rates in the community for similar services performed by attorneys of comparable skill, experience, and reputation, and it finds that Mr. Lai's claimed hourly rate of $250 is reasonable, as it is in line with not only other awards in this district, but also with the Adjusted Laffey Matrix and the U.S. Department of Justice's Laffey Matrix.[3,4]  *See, e.g., Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (finding an ordinary billing rate of $300 per hour reasonable for a lawyer in private practice and utilizing the Adjusted Laffey Matrix).

### ii. Reasonableness of the Number of Hours Billed

In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986).

Here, Plaintiffs' counsel billed a total of 76.1 hours in connection to discovery disputes

---

[3] Adjusted Laffey Matrix, http://www.laffeymatrix.com/ (last visited Jun. 13, 2016).
[4] U.S. Dep't of Justice, Laffey Matrix 2014-2015 (July 14, 2014), http://www.justice.gov/usao/dc/divisions/Laffey%20Matrix_2014-2015.pdf.

14

with Safety Trucking, including the requests for admission, which date back to July 2015. After reviewing the detailed billing records provided in Mr. Lai's Supplemental Declaration, which offer a breakdown of the work completed and the specific tasks performed, the undersigned finds that the hours billed are unreasonable.  Specifically, the Court declines to award fees in connection with work performed in July 2015, as it is too far removed temporally.  Notwithstanding, Defendants' failure to admit in May 2015 has been considered in relation to the instant motion.

The Court finds that 9.4 hours expended on January 14 and 21, 2016 in connection with the January 22, 2016 joint letters to be reasonable.  The Court finds that 24.5 hours spent in connection with the motion for sanctions is unreasonable, and reduces the award to 15.0 hours. (*See* Suppl. Lai Decl., Ex. B.)  The Court similarly finds that the 27.8 hours spent on reviewing Defendants' opposition and drafting Plaintiffs' reply to the motion for sanctions to be unreasonable, and reduces the award to 10.0 hours.

Thus, the undersigned finds that Plaintiffs' counsel reasonably billed 34.4 hours in connection with Defendants' abuse of the discovery process, and orders Defendants Safety Trucking and Tun to compensate Mr. Lai accordingly, for a total award of $8,600.00.

### IV.   CONCLUSION

In light of the foregoing, Plaintiffs' motion for sanctions against Safety Trucking, Jia Tun Zheng, and counsel Leon Jew is GRANTED IN PART AND DENIED IN PART.  Specifically, the Court imposes monetary sanctions of $8,600.00 against Safety Trucking and Jia Tun Zheng, jointly and severally, to be paid within 30 days of this order.  Plaintiffs' requests for terminating sanctions against Defendants and sanctions against Mr. Jew are denied.

IT IS SO ORDERED.

Dated: June 15, 2016

KANDIS A. WESTMORE
United States Magistrate Judge

15